**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

| | | |
|---|---|---|
| J.K. PIERCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 1:18-CV-12510 |
| | § | |
| BIOGEN U.S. CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff J.K. Pierce ("Pierce" or "Plaintiff") files this original complaint and jury demand against Defendant Biogen U.S. Corporation ("Biogen"), alleging sex discrimination, sexual harassment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended. For causes of action, Plaintiff would show the Court as follows:

**I.   PARTIES, JURISDICTION AND VENUE**

1.   Pierce is a female resident and citizen of Birmingham, Shelby County, Alabama.

2.   Biogen is a domestic corporation that is authorized to do business and is doing business in the State of Alabama. Biogen may be served with process in this case by serving its registered agent for service, United Agent Group Inc., at 225 Cedar Hill Street #200, Marlborough, Massachusetts 01752.

3.   This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e5(f)(3).

4.   Pierce was previously employed by Biogen, a corporation that resides in this judicial district. Venue in this district is proper under 28 U.S.C. § 1391(b)(1) and 42 U.S.C. § 2000e5(f)(3).

5. Biogen is an employer within the meaning of 2 U.S.C. § 2000e(b).

6. Pierce filed a Charge of Discrimination with the Equal Employment Opportunity ("EEOC") on or about March 5, 2018. Pierce subsequently filed three different amended Charges of Discrimination.

7. On September 4, 2018, the Equal Employment Opportunity Commission issued Pierce a notice of right to sue, and this lawsuit is being filed within ninety (90) days of Pierce's receipt of that notice on September 11, 2018.  All conditions precedent to the filing of this action have been fulfilled.

## II.  FACTUAL BACKGROUND

8. Biogen hired Pierce on October 10, 2016 as the Company's Territory Business Manager in the Birmingham, Alabama territory. In this position, Pierce acted as a sales representative, selling a portfolio of Multiple Sclerosis drugs to neurologists, assisting in patient access to treatment, and providing educational programs to physicians and patients. Pierce reported directly to Sherod "Bubba" Shaw, the Regional Account Director.

9. Shortly after Pierce began her employment, Shaw commenced with an ongoing and continuous pattern of gender discrimination and inappropriate behavior of a sexual nature towards Pierce. Beginning in December 2016, Shaw started commenting about Pierce's attire and shoes being "too high end" and that wearing heels made her "too tall." These types of comments began to turn into sexually-oriented comments, including Shaw discussing how often he has sex with his wife, asking about Pierce's sex life, commenting how he had sex with one of the nurses in an office that he called on for Biogen, relating stories of how a former female employee had problems keeping her breasts covered, and stating that he and Pierce could never stay married because he was too needy.

10. These types of totally inappropriate comments and statements were consistent over the course of Pierce's employment, and generally occurred when Shaw and Pierce were going on field rides for extended periods of time. Thus, the fact that Pierce could not just walk away when he made those comments made this a very difficult situation in which Pierce was basically a "captive" audience.

11. In addition to the sexual harassment, Shaw was clearly treating Pierce differently than her male counterparts. Biogen's sales meetings usually involved some aspect of company-sponsored drinking activities during the evenings. In the limited time that Pierce was with the Company, Pierce witnessed highly-intoxicated males continue to drink unabated and with no repercussions. On the other hand, Shaw made at least one complaint to HR concerning Pierce being intoxicated during a sales meeting in New Orleans despite the fact that she had had only a few drinks, was not drunk, and had gone back to her hotel while the drunker male employees continued drinking into the next morning.

12. Shortly after that sales meeting, an HR representative informed Pierce that she was conducting an investigation into Pierce's behavior during the New Orleans meetings. Just a few days later, Pierce had to endure a two-day field ride with Shaw. On the second day of the field ride, Shaw brought up the HR investigation into Pierce's alleged intoxication at the New Orleans meeting. Although Pierce informed Shaw that she could not discuss the alleged incident (the HR representative had previously admonished Pierce that she could not say anything about the incident and the investigation to anyone other than HR), Shaw began to talk about it. At one point, Shaw told Pierce that she would be receiving a written warning as a result of the incident, which automatically disqualified her from receiving any portion of sales contest winnings and

sales awards for 2018, which resulted in an approximate loss of between $15,000.00 and $30,000.00.

13. Since filing her initial charge of discrimination, Pierce was informed on March 12, 2018 that she was, in fact, receiving a written warning for the false allegation regarding New Orleans, which caused Pierce economic losses in not being paid any portion of sales contest winnings and sales awards for 2018. On May 16, 2018, the Company gave Pierce an "amended" written warning for another false allegation of inappropriate behavior towards male colleagues, one of which allegedly occurred in January 2017, more than sixteen months prior to the alleged incident.

14. On May 29, 2018, Pierce was informed that she would be again reporting directly to Bubba Shaw, the same person who engaged in discriminatory, retaliatory, and sexually-harassing behaviors against Pierce. Additionally, even though Pierce complied with the Company's admonitions to keep the false allegations filed against her confidential, numerous persons within the Company were aware of them, which caused Pierce even further stress, anxiety, shame, and embarrassment among other things.

15. Bubba Shaw notified Pierce that he would be working with her on June 28, 2018. This would be the first time that Shaw was to work directly with Pierce with no others present since the filing of her charge of discrimination. Based upon all of the foregoing discrimination, sexual harassment, and retaliation that has occurred with Shaw, Pierce was not physically or mentally able to put herself in this type of work situation with Shaw. Based upon the emotional distress, mental anguish, stress, and anxiety that has been caused by Shaw and by Biogen's

dismissive and retaliatory attitude towards Pierce, she went on medical leave per her health care provider's orders.

16. Pierce's employment with Biogen has been absolute torture. Pierce has never been in a situation where she has had to endure harassment, discrimination, and retaliation like this. Despite this horrific situation, Pierce worked tirelessly in growing the business as evidenced by excellent sales numbers, and maintained a positive attitude in the face of severe adversity.

17. On November 12, 2018, a company representative informed Pierce that she was being terminated effective November 13, 2018 because she had not returned to her position and gotten off leave. Had Biogen not continued to insist that Pierce report to Shaw, Pierce likely could have continued to work in her sales position, and she would not have been discharged.

18. Pierce was sexually harassed, discriminated against on account of her sex, and retaliated against for (1) rejecting Shaw's sexual advances, (2) her prior complaints of discrimination and harassment and/or (3) the previous filing of her charge and amended charges of discrimination, harassment, and retaliation, all in violation of Title VII of The Civil Rights Act of 1964, as amended. More specifically, Pierce has been the victim of sexual harassment (both quid pro quo and hostile work environment), gender discrimination, retaliation for rejecting Shaw's sexual advances, and retaliation for making complaints and filing her charge and amended charges with the EEOC regarding Shaw's actions and the Company's discriminatory and retaliatory treatment.

### III. FIRST CAUSE OF ACTION: SEX DISCRIMINATION

19. Pierce realleges and incorporates paragraphs 1-18 as if fully contained herein.

20. Biogen's actions as described herein constitute unlawful sex discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended.

21. As a result of the unlawful discriminatory actions of Biogen, Pierce has suffered and will suffer actual damages in the form of lost wages and employment benefits, both past and future, for which she hereby sues.

22. As a further result of Biogen's discriminatory actions, Pierce has suffered non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages, for which she hereby sues.

23. At all times relevant to this action, Biogen acted with malice or reckless indifference to Pierce's protected rights, thus entitling Pierce to punitive damages.

24. Pierce seeks attorneys' fees and costs of suit.

### IV. SECOND CAUSE OF ACTION: QUID PRO QUO SEXUAL HARRASSMENT

25. Pierce realleges and incorporates paragraphs 1-24 as if fully contained herein.

26. Shaw made unwelcomed sexual advances towards Pierce. Shaw made submission to such conduct implicitly a condition of Plaintiff's employment. Shaw made Plaintiff's response to unwanted sexual advances a condition of employment and a basis for Biogen's decisions with respect to Plaintiff's employment.

27. Biogen's actions as described herein constitute unlawful sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

28. As a result of the unlawful discriminatory actions of Biogen, Pierce has suffered and will suffer actual damages in the form of lost wages and employment benefits, both past and future, for which she hereby sues.

29. As a further result of Biogen's discriminatory actions, Pierce has suffered non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, personal

humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages, for which she hereby sues.

30. At all times relevant to this action, Biogen acted with malice or reckless indifference to Pierce's protected rights, thus entitling Pierce to punitive damages.

31. Pierce seeks attorneys' fees and costs of suit.

## V. THIRD CAUSE OF ACTION: HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT

32. Pierce realleges and incorporates paragraphs 1-31 as if fully contained herein.

33. Shaw subjected Pierce to a sexually harassing work environment that unreasonably interfered with her ability to do her job. This sexual harassment included unwanted sexual advances and verbal sexual comments.

34. Submitting to the unwelcome and offensive physical touching and sexual comments by Shaw was an explicit and/or implicit term or condition of Pierce's employment.

35. The offensive and unwelcomed sexual comments and advances instilled fear and anxiety in Pierce.

36. Biogen's actions as described herein constitute unlawful sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

37. As a result of the unlawful discriminatory actions of Biogen as described above, Pierce has suffered and will suffer actual damages in the form of lost wages and employment benefits, both past and future, for which she hereby sues.

38. As a further result of Biogen's actions, Pierce has suffered non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages, for which she hereby sues.

39. At all times relevant to this action, Biogen acted with malice or reckless indifference to Pierce's protected rights, thus entitling Pierce to punitive damages.

40. Pierce seeks attorneys' fees and costs of suit.

## VI. FOURTH CAUSE OF ACTION: RETALIATION

41. Pierce re-alleges and incorporates the allegations contained in Paragraphs 1-40 as if fully stated herein.

42. Biogen's actions as described herein constitute unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

43. As a result of the unlawful retaliatory actions of Biogen as described above, Pierce has suffered and will suffer actual damages in the form of lost wages and employment benefits, both past and future, for which she hereby sues.

44. As a further result of Biogen's retaliatory actions, Pierce has suffered non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages, for which she hereby sues.

45. At all times relevant to this action, Biogen acted with malice or reckless indifference to Pierce's protected rights, thus entitling Pierce to punitive damages.

46. Pierce seeks attorneys' fees and costs of suit.

## VII. JURY TRIAL DEMANDED

47. Plaintiff requests a jury trial on all claims or defenses arising in this litigation.

## VIII. PRAYER

Pierce asks that Biogen be cited to appear and answer and that Pierce be awarded judgment against Biogen for:

a. Actual damages, including lost wages and benefits (both front and back pay);

b. Compensatory damages;

c. Punitive and/or exemplary damages;

d. Prejudgment and post-judgment interest;

e. Costs of suit;

f. Attorneys' fees; and

g. All other relief that the Court deems appropriate.

Respectfully submitted,

December 6, 2018

***LYON, GORSKY & GILBERT, L.L.P.***

12001 N. Central Expressway
Suite 650
Dallas, Texas 75243
Phone: 214-965-0090
Fax:    214-965-0097
Email: dwatsky@lyongorsky.com

*/s/ David K. Watsky*
**David K. Watsky**

**LEAD COUNSEL FOR PLAINTIFF**

***LAW OFFICES OF PAUL H. MERRY***
1 Gateway Center
300 Washington Street
Suite 308
Newton, Massachusetts 02458
Phone: 617-720-2400
Fax: 617-742-1887
Email: paul.merry@fairworkplace.net

*/s/Paul H. Merry*
**Paul H. Merry**

**LOCAL COUNSEL FOR PLAINTIFF**