UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| J.K. PIERCE,<br><br>      Plaintiff,<br><br>v.<br><br>BIOGEN U.S. CORPORATION,<br><br>      Defendant. | Civil Action No. 18-12510-DJC |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                                                                       **May 14, 2019**

## I. Introduction

Plaintiff J.K. Pierce ("Pierce") has filed this lawsuit against Defendant Biogen U.S. Corporation ("Biogen") seeking to recover for alleged sex discrimination (Count I), sexual harassment (Count II and III), and unlawful retaliation under Title VII of the Civil Rights Act of 1964 (Count IV). D. 1. Biogen has moved to transfer the case to the United States District Court for the Northern District of Alabama, D. 9, and to dismiss Count II, D. 11. For the reasons discussed below, the motion to dismiss Count II, D. 11, is DENIED and the motion to transfer, D. 9, is ALLOWED.

## II. Standard of Review

To decide a motion to dismiss for failure to state a claim, the Court must determine if the well-pled facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). "The plaintiff need not demonstrate [it] is

likely to prevail" at this stage, only that its claims are facially plausible. Garcia- Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013). Plausible means "more than a sheer possibility," and permits the Court to incorporate a contextual analysis of the facts. Id. at 102-03 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). This determination requires a two-step inquiry. Id. at 103. First, the Court must distinguish the factual allegations from the conclusory legal allegations in the complaint. Id. Second, taking plaintiff's allegations as true, the Court should be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678); Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 11 (1st Cir. 2011). A complaint "does not need detailed factual allegations," but "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

For a motion to transfer, 28 U.S.C. § 1404(a) provides that for "the convenience of parties and witnesses" and "in the interest of justice," a court "may transfer any civil action to any other district . . . where it might have been brought." The decision to transfer rests within the Court's discretion. See Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir. 1977). The Court need not determine the best venue, but "merely a proper venue." Astro–Med v. Nihon Kohden of America, 591 F.3d 1, 12 (1st Cir.2009). For the purposes of the motion to transfer, the Court accepts the parties' uncontroverted facts as true. See, e.g., OsComp Sys., Inc. v. Bakken Exp., LLC, 930 F. Supp. 2d 261, 264 (D. Mass. 2013).

III. Factual Allegations

Pierce, a resident of Alabama, was a sales representative for Biogen from October 10, 2016 to November 12, 2018. D. 1 at ¶¶ 1, 8, 17. Biogen is a global biotechnology company

2

headquartered in Massachusetts that does business nationally including in Alabama. D. 1 at ¶2; D. 10 at 1-2.

During her employment with Biogen, Pierce's immediate supervisor was primarily Sherod "Bubba" Shaw ("Shaw"), the Regional Account Director for the Birmingham, Alabama territory. D. 1 at ¶¶ 8-15. Shaw repeatedly made comments about Pierce's attire and comments of a sexual nature, including, among other things, asking about Pierce's sex life, discussing his own sex life, and saying that "he and Pierce could never stay married because he was too needy." Id. at ¶¶ 9-10. Shaw would make these comments while he and Pierce were on "field rides," id. at ¶ 10, car rides with only Pierce and Shaw in the car.

At some point, Shaw filed a complaint with Biogen's human resources department about Pierce's alleged intoxication during a Biogen sales meeting in New Orleans. Id. at ¶ 11. Biogen's human resources department investigated the complaint. Id. at ¶ 12. During a subsequent field ride, Shaw told Pierce that she would receive a written warning as a result of the New Orleans sales meeting complaint. Id. Pierce received the written warning on March 12, 2018. Id. at ¶ 13. On May 16, 2018, Pierce received an amended written warning relating to separate allegations of inappropriate behavior. Id. When Pierce learned that she would have another field ride with Shaw on June 28, 2018, she went on medical leave instead per her healthcare provider's orders. Id. at ¶ 15. On November 12, 2018, Biogen informed Pierce, who had not yet returned from medical leave, that the company was terminating her employment effective November 13, 2018. Id. at ¶ 17.

## IV. Procedural History

On December 6, 2018, Pierce initiated this action against Biogen asserting four federal law claims: a sex discrimination claim (Count I), two sexual harassment claims (Count II and III) and

3

an unlawful retaliation claim (Count IV), all in violation of Title VII of the Civil Rights Act of 1964. D. 1. Biogen has now moved to transfer the case to the Northern District of Alabama, D. 9, and also moved to dismiss Count II for failure to state a claim. D. 11. The Court heard oral argument on the motions and took the matters under advisement. D. 24.

**V.     Discussion**

*1.     Motion to Dismiss Count II*

The crux of Biogen's motion to dismiss Count II for failure to state a claim is that Pierce has not alleged sufficient facts with respect to the requisite elements of a *quid pro quo* sexual harassment claim. Both parties identify paragraphs 18 and 26 of Pierce's complaint, D. 1, as the key allegations in support of Pierce's *quid pro quo* claim. D. 12, 16, 23. Those paragraphs allege as follows:

> 18. Pierce was sexually harassed, discriminated against on account of her sex, and retaliated against for (1) rejecting Shaw's sexual advances, (2) her prior complaints of discrimination and harassment and/or (3) the previous filing of her charge and amended charges of discrimination, harassment and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, as amended. More specifically, Pierce has been the victim of sexual harassment (both quid pro quo and hostile work environment), gender discrimination, retaliation for rejecting Shaw's sexual advances, and retaliation for making complaints and filing her charge and amended charges with the EEOC regarding Shaw's actions and the Company's discriminatory and retaliatory treatment.
>
> . . .
>
> 26. Shaw made unwelcomed sexual advances towards Pierce. Shaw made submission to such conduct implicitly a condition of Plaintiff's employment. Shaw made Plaintiff's response to unwanted sexual advances a condition of employment and a basis for Biogen's decisions with respect to Plaintiff's employment.

D. 1. These allegations cannot, however, been divorced, from the totality of circumstances otherwise alleged in the complaint in determining whether Pierce has plausibly alleged Count II. A claim for *quid pro quo* sexual harassment arises when "an employee or supervisor uses his or

her superior position to extract sexual favors from a subordinate employee, and if denied those favors, retaliates by taking action adversely affecting the subordinate's employment." Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006) (internal citation omitted). There does not appear to be a dispute that Shaw was Pierce's supervisor thus the Court will focus on whether Pierce has plausibly alleged that there was an attempt by Shaw to extract sexual favors from Pierce; and subsequent retaliation by Shaw following the denial of those sexual favors.

Considering the relevant case law and allegations in the complaint, Pierce has plausibly alleged *quid pro quo* sexual harassment. Lipsett v. Univ. of Puerto Rico, 864 F.2d 881 (1st Cir. 1988), is particularly instructive. Here, as was the case for the plaintiff in Lipsett, Pierce has alleged "what she perceived as sexual attention," id. at 912, in the form of Shaw's comments about Pierce's attire and how he wanted her to look, his discussions of how often he has sex with his wife, his questions about Pierce's sex life, his noting that he had had sex with someone who was not his wife and mentioning that a former female Biogen employee "had problems keeping her breasts covered" and his comments that he and Pierce, if they were to be married, would not be able to "stay" married because he was "too needy," D. 1 at ¶ 9. The reasonableness of Pierce's perception of Shaw's behavior is "a question of fact" best left to a jury, see Lipsett, 864 F.2d at 913. The First Circuit stated in Lipsett, "Although the evidence of [a defendant's] conduct is ambiguous, we think a reasonable jury could infer that he pressured [plaintiff] for sexual favors in return for assistance in the Program. . . . it was error for the district court to rule, as a matter of law, that the comments were so clearly innocuous as to justify granting summary judgment in favor of [the defendant]." Id. Pierce also alleges retaliation following her declining Shaw's advances, namely that Shaw filed a complaint with Biogen human resources despite Pierce's

5

behavior having been appropriate. The Court, therefore, concludes that Pierce has plausibly alleged Count II for a *quid pro quo* sexual harassment claim.

Biogen cites several cases in its opposition, D. 16, in support of its argument that Pierce's pleading is deficient, but none of them warrant a different outcome here. See Lekettey v. City of New York, 637 F. App'x 659, 661 (2d Cir. 2016) (noting that plaintiff failed to allege that the individual who had made sexual advances on the plaintiff was her supervisor and the alleged retaliation came over a year after the rejection of the sexual advance); Smith v. Swift Transp. Co. Inc., No. 13-2247-RDR, 2014 WL 1047953, at *1 (D. Kan. Mar. 18, 2014) (noting that *pro se* complaint asserted claims that "were vague and some were incomprehensible"); Santos v. Puerto Rico Children's Hosp., No. CIV. 11-1539 MEL, 2012 WL 4508122, at *7 (D.P.R. Sept. 28, 2012) (noting failure to allege any of the alleged bad actors were plaintiff's superior or that any alleged harasser "used employer processes to punish her for denying sexual favors"); Donovan v. Mt. Ida Coll., No. CIV.A. 96-cv-10289-RGS, 1997 WL 259522, at *5 (D. Mass. Jan. 3, 1997) (finding that alleged retaliation, a change in behavior and treatment by a professor, "occurred well before" the alleged sexual advances); Davenport v. Maryland, 38 F. Supp. 3d 679 (D. Md. 2014) (requiring dismissal due to failure to exhaust administrative remedies). Biogen also quotes from Sharbine v. Boone Expl., Inc., No. 09-CV-1025, 2010 WL 892117, at *1 (W.D. Ark. Mar. 9, 2010), to make the argument that a *quid pro quo* sexual harassment claim requires that the sexual commentary itself "include[] . . . threats, implied or express, of retaliation." Id. at *4. However, accepting the totality of Pierce's allegations as true as the Court must do at this juncture, a jury reasonably could infer such threats from the alleged circumstances of Shaw and Pierce's interactions including the timing and substance of his complaint about her alleged behavior at a sales meeting to HR. D. 1 at ¶¶ 11-12.

For all of these reasons, the Court denies Biogen's motion to dismiss Count II.

   2.   *Motion to Transfer*

When considering a motion to transfer, a "strong presumption" exists in favor of a plaintiff's choice of forum. Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000). A defendant thus bears the burden to show that the case should be transferred. Id. Yet the presumption is not dispositive and "may give way to other overriding considerations." Karmaloop, Inc. v. ODW Logistics, Inc., 931 F. Supp. 2d 288, 290 (D. Mass. 2013). Where the forum has no obvious connection to the case or where the plaintiff is not a forum resident, the plaintiff's presumption carries less weight. U.S. ex rel. Ondis v. City of Woonsocket, Rhode Island, 480 F. Supp. 2d 434, 436 (D. Mass. 2007).

   a)   Forum Selection Clauses

Before turning to the factors to consider for transfer of venue, the Court acknowledges the parties' dispute over the import of the forum selection clause contained in Pierce's intellectual property agreement with Biogen.[1] The agreement reads as follows:

> 21. This Agreement shall be deemed to have been made in the Commonwealth of Massachusetts and shall take effect as an instrument under seal within Massachusetts. The validity, interpretation and performance of this Agreement, and any and all other matters relating to my employment or any separation of employment from the Company shall be governed by and construed in accordance with the internal law of Massachusetts, without giving effect to conflict of law principles. Both of us acknowledge that a substantial portion of the Company's business is based out of and directed from the Commonwealth of Massachusetts where the Company maintains its United States corporate headquarters and other facilities, where it administers all employee compensation and benefits, and where this Agreement shall be executed by the Company and thereafter maintained.
>
> 22. Any action regarding a Dispute (as defined above) shall be commenced in a court of competent jurisdiction in the Commonwealth of Massachusetts, except if I

---

[1] Pierce also cites the forum selection clause in her separation agreement with Biogen. D. 15 at 3. The parties agree, however, that Pierce never signed the separation agreement and it is, therefore, not relevant to the issues presented here. Id. at 6.

> am employed primarily in a state other than Massachusetts, then an action may be commenced in such other state.

D. 15-1 at 16. "Under federal law, the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 17 (1st Cir. 2009). "Permissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere . . . In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." Id. (internal citation omitted). The intellectual property agreement clause is a permissive clause due to its "except . . . " language authorizing commencement of an action in an alternative jurisdiction to Massachusetts. Because Pierce was primarily employed in Alabama, an action could be commenced in Alabama per the forum selection clause.

When a forum selection clause is permissive rather than mandatory, it receives less weight in the transfer decision and the Court must still look to the standard factors to analyze the motion to transfer. See, e.g., Bos. Post Partners II, LLP v. Paskett, No. 15-13804-FDS, 2016 WL 3746474, at *11 (D. Mass. July 8, 2016). While the forum selection clause is permissive, it provides that a party shall bring an action in Massachusetts unless an employee's primary work location is elsewhere as Pierce's was in Alabama. Since the clause allowed for this choice, the Court must look to the balance of the traditional § 1404(a) factors.

     b)  28 U.S.C. § 1404(a) Factors

Under 28 U.S.C. § 1404(a), a court weighs public interest and private interest factors. Friends of Animals v. Phifer, No. 15-cv-30011-MGM, 2015 WL 1943898, at *2 (D. Mass. Apr. 29, 2015). Public interest factors include the "statutory consideration of the interest of justice," Phifer, 2015 WL 1943898, at *2, but also the "practical difficulties of unnecessarily imposing

upon a busy court the obligation to hear a case more fairly adjudicated elsewhere, the imposition on jurors called to hear a case that has no relation to their community, and the familiarity of the court with applicable laws." J.J. Reidy & Co., 2005 WL 3728726, at *9 (citing Nowak, 94 F.3d at 719-20). Private interest factors include "the statutory considerations of convenience of the parties and witnesses," id., but also the "relative ease of access to sources of proof, availability of compulsory process, comparative trial costs, ability to enforce a judgment" and any "practical problems that make trial of a case easy, expeditious and inexpensive." J.J. Reidy & Co. v. Airwater Corp., No. 05-cv-40049-FDS, 2005 WL 3728726, at *9 (D. Mass. Sept. 27, 2005) (citing Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 719-20 (1st Cir. 1996)).

At the outset of this analysis, the Court notes that this case could have been brought in Alabama. The permissive forum selection clause allows Pierce to bring an action against Biogen in Alabama and many of the important actions in the case took place in Alabama. See 42 U.S.C.A. § 2000e-5 (noting that "an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed . . . ."). Moreover, based on the allegations here, it appears that Biogen has sufficient presence in, and contacts with, Alabama for the exercise of personal jurisdiction over Biogen in Alabama.

Moreover, there are reasons to question the usual "strong presumption" in favor of Pierce's choice of forum. Not only is Pierce not a Massachusetts resident (she lives in Alabama), but all of the allegedly discriminatory conduct occurred outside of Massachusetts, mostly in Alabama. See, e.g., Phifer, 2015 WL 1943898, at *3 (transferring case in part because the plaintiff was a nonresident); Lando & Anastasi, LLP v. Innovention Toys, L.L.C., 79 F. Supp. 3d 375, 377 (D. Mass. 2015) (transferring case because "the operative facts of [the] dispute . . . have no material connection with this district"). As the First Circuit has noted, the plaintiff's choice of forum "may

9

be in doubt when the facts of the case point to some other forum that may be more appropriate." Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda., 906 F.2d 45, 52 (1st Cir. 1990). That is, although a presumption in favor of Pierce's choice of forum remains here, the Court cannot say that it is a strong one.

The convenience of witnesses is "[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer." Ondis, 480 F. Supp. 2d at 437 (quoting Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 3 (D. Mass. 1987)) (internal quotation mark omitted and alteration in original). In considering this factor, courts look at "the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." Fed. Ins. Co. v. XTRA Intermodal, Inc., No. 14-cv-14010-ADB, 2015 WL 4275181, at *5 (D. Mass. July 15, 2015) (citation and internal quotation marks omitted). "In analyzing this factor, the court is ordinarily concerned with the location of witnesses who are not parties or employees of the parties." Bos. Post Partners II, LLP v. Paskett, No. 15-13804-FDS, 2016 WL 3746474, at *10 (D. Mass. July 8, 2016); see Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 71 (D. Mass. 2001) (noting if "the persuasion of an employer who is a party to the action can secure the appearance of witnesses regardless of the location of forum, that factor diminishes in importance"). Here, some of Biogen's likely witnesses live in Massachusetts (for example, Heather Lee Brown, Biogen People Relations Partner), but more of them live in Alabama and other states. D. 10 at 8-10. A number of the likely witnesses identified by Biogen live in states other than Massachusetts and Alabama, but many of them leave in states closer to Alabama than to Massachusetts. D. 10 at 9-10. Pierce alleges that at least three other Biogen employees[2] who reside in Massachusetts would likely be witnesses,

---

[2] Pierce also alleges that documents such as employment records are located in Massachusetts. D. 15 at 10. Given the modern movability of documents, this is a less significant factor in the Court's analysis here. See Falafel

10

particularly with respect to her retaliation claim: Jennifer Mountain, Human Resources; Lauren Duprey, Vice President, Human Resources; and Dell Faulkingham, Vice President of Sales. D. 15 at 10. Yet, even these witnesses are employed Biogen, presumably under Biogen's control. Neither party has identified any likely non-party witnesses. Therefore, the factor of the convenience of witnesses weighs only slightly in Pierce's favor.

Next, the Court turns to the connection between the issues at stake and Pierce's chosen forum and the law to be applied in this case. The main connections to Massachusetts are Biogen's headquarters, the forum selection clause's focus on Massachusetts and the residence of a few Biogen witnesses. Alabama, on the other hand, is home to both Pierce and Shaw, the key non-party witness, and is the principal location of the alleged discrimination and harassment. Alabama has a much stronger connection to the issues and so this factor weighs in favor of transfer. The forum selection clause does anticipate applying Massachusetts law where relevant. D. 15 at 2-3. Such consideration, however, does not push this factor in Pierce's favor where the United States District Court for the Northern District of Alabama could faithfully apply Massachusetts law and Pierce's claims against Biogen arise under federal law, specifically Title VII. Accordingly, this factor weighs in favor of transfer.

Finally, Biogen argues that the "public interest" tilts in favor of transfer because "an Alabama resident is alleging that she was harassed by another Alabama resident while performing her job in Alabama," D. 10 at 11, and thus Massachusetts and its jurors would have little interest in this case. Biogen's headquarters here and the fact that some witnesses are Massachusetts residents provide Massachusetts some public interest in the outcome of this litigation, but Alabama

---

Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc., No. CV 12-10551-NMG, 2012 WL 12941889, at *10 (D. Mass. Sept. 28, 2012) (noting that "[t]he location of documents is not a significant factor in the analysis when such documents are movable").

still has a stronger interest in this case given the facts and circumstances even as alleged by Pierce. See, e.g., Rosenthal v. Unum Grp., No. 17-CV-40064-TSH, 2018 WL 1250483, at *4 (D. Mass. Mar. 12, 2018) (noting that "Kansas has a greater interest in the resolution of this claim because the alleged breach occurred in Kansas and the Plaintiff lives there").

For all of these reasons, the Court ALLOWS the transfer of this case to the United States District Court for the Northern District of Alabama.

**VI.     Conclusion**

For the foregoing reasons, the Court DENIES the motion to dismiss Count II, D. 11, and ALLOWS the motion to transfer, D. 9, to the United States District Court for the Northern District of Alabama.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge